IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

NELSON VARUGHESE

    Plaintiff,

v.

CITY OF ALLENTOWN (PENNSYLVANIA)

    Defendant.

No.

JURY TRIAL DEMANDED

# COMPLAINT

Plaintiff Nelson Varughese files this Complaint against Defendant City of Allentown (Pennsylvania) and in support thereof avers as follows:

## JURISDICTION AND VENUE

1. This Court has original jurisdiction over Counts I and II pursuant to 28 U. S. C. §1331, in that these claims are based upon laws of the United States of America, the Age Discrimination in Employment Act, 29 U. S. C. § 621 ("ADEA"), and Title VII of the Civil Rights Act of 1964, 42 U. S. C. §2000e ("Title VII"). This Court also has supplemental jurisdiction over Count III, which arises under a law of the Commonwealth of Pennsylvania, the Pennsylvania Whistleblower Law, 43 P.S. §1421, et seq. ("PWL").

2. Venue is appropriate in this Court pursuant to 28 U. S. C. §1392(b) in that Defendant has ongoing business operations in this District and a substantial part of the events giving rise to the claim occurred in this District.

3. The amount in controversy exceeds $150,000.00, exclusive of interest and costs.

4.	Plaintiff has complied with the applicable administrative remedies by first filing a Charge with the Equal Employment Opportunity Commission ("EEOC") on August 28, 2023, Charge no. 530-2023-07948, and simultaneously filing a Complaint with the Pennsylvania Human Relations Commission ("PHRC"), (Case no. unknown).

5.	On September 6, 2023, the EEOC issued a Dismissal and Notices of Suit Rights permitting Plaintiff to file his ADEA and Title VII claims in this action.

6.	Plaintiff intends to amend this Complaint and assert causes of action for age discrimination and race, color and national origin discrimination, in violation of the Pennsylvania Human Relations Act, 43 P. S. §955(a) ("PHRA"), upon receipt of applicable authority from the PHRC.

**PARTIES**

7.	Plaintiff Nelson Varughese ("Varughese") is adult male, who resides at 210 Fernwood Court, Harleysville, PA 19438.

8.	Defendant City of Allentown ("Allentown") is a City in the Commonwealth of Pennsylvania that maintains a principal place of business at 435 Hamiton Street, Allentown, PA 18001.

9.	At all times, relevant hereto, Allentown was acting through its agents, servants and employees, who were acting within the scope of their authority in the course of their employment and under the direct control of Allentown

**FACTUAL BACKGROUND**

10.	Plaintiff Nelson Varughese ("Varughese") is a 62-year-old male.

11.	Varughese is a native of India, who became a U. S. citizen in 1985.

12.	Varughese has a Bachelor of Science Degree in Electrical Engineering and Technology.

13. Varughese has 35 years of public and private sector experience in traffic engineering and related fields, and he is an International Municipal Signal Association (IMSA) Certified Traffic Signal Inspector.

### *Varughese's Employment as Allentown's Traffic Control Superintendent*

14. In June 2013, Varughese commenced employment with Allentown as a Traffic Control Superintendent.

15. Varughese was continuously employed for nearly 10 years, until his employment was terminated on May 9, 2023.

16. In the year 2022, Varughese earned a salary of approximately $91,312.00, plus employment benefits, including health insurance, and a city pension, which increases based upon years of service and salary.

17. Throughout Varughese's employment, he received satisfactory performance evaluations; and he never received any disciplinary warnings or performance improvement plans.

18. As Traffic Control Superintendent, Varughese had nine employees who reported to him, including a Traffic Chief, Maintenance Supervisor, Technicians, and a Project Manager.

### *Allentown's Termination of Varughese's Employment*

19. Shortly prior to the termination of Varughese's employment, upper management suggested to one of Varughese's subordinates, Curtis Xander, Chief Maintenance Supervisor (approximate age: 67), that he should retire; Xander retired shortly thereafter.

20. On May 9, 2023, Mark Shahda ("Shada"), Director of Public Works, contacted Varughese after regular work hours, and said, "This is your last day as the City's Traffic Control Superintendent."

21. Varughese was in a state of shock, as he was never advised that his job was in jeopardy for any reason.

22. Varughese was told that all of his responsibilities and duties to Allentown ceased as of May 9, 2023, and that he was required to immediately return all Allentown property in his possession.

23. Varughese asked Shahda why his employment was being terminated, and Shahda replied that he could not tell Varughese the reason.

24. Shahda showed Varughese two separate letters and advised Varughese that he had to immediately sign one of two letters. One letter indicated that Varughese's employment was "terminated"; the other indicated that Varughese "resigned."

25. As Varughese was concerned about future employment prospects and issues with collecting his pension if his employment record reflected a termination, Varughese signed the resignation letter.

26. Varughese did not have any desire to resign, and if permitted to do so, he would have continued his employment with Allentown.

27. Upon information and belief, Matt Tuerk ("Tuerk"), Allentown's Mayor, who is of Latino descent, was the decisionmaker in terminating Varughese.

28. Since becoming Mayor in January 2022, Mayor Tuerk has terminated several older, qualified Allentown employees and replaced them with substantially younger employees.

29. Mayor Tuerk has also terminated non-Latino employees and replaced them with Latino employees.

30. On May 12, 2023, Varughese sent a letter to Clarissa Werley, Allentown Human Resource Manager, asking for an explanation as to why his employment was terminated; Varughese never received a response.

### *Allentown's Hiring of Varughese's Replacement As Traffic Control Superintendent*

31. On May 15, 2023, six days after terminating Varughese, Allentown advertised an open Traffic Control Superintendent position, which contains all essential duties and responsibilities that Varughese performed during his employment.

32. Allentown hired Yaime Delgado ("Delgado") (approximate age: mid-30's), to replace Varughese.

33. Delgado was born in the Dominican Republic and is of Latino descent.

34. Delgado does not have any experience or education in traffic engineering and does not have the qualifications necessary to perform the job as per the city's job description for the Traffic Control Superintendent position.

### *Allentown's Insistence on the Installation of Multi-Way Stop Signs and Varughese's Report of Wrongdoing*

35. As part of Nelson Varughese's job responsibilities as Traffic Control Superintendent, he was responsible for overseeing and approving the process by which multi-way stop control signs could be placed at intersections.

36. In a standard two-street intersection, a multi-way stop control places stop signs in four locations.

37. Multi-way stop control signs can lead to driver disrespect, ignoring of warranted stop signs, and make and create an enforcement issue.

38. During the last year of Varughese's employment, there were multiple occasions where Varughese was advised by Director Shahda that Mayor Tuerk wanted multi-way stop signs installed at certain intersections.

39. The Commonwealth of Pennsylvania Department of Transportation ("PennDOT") follows laws and regulations that must be met for multi-way stop controls to be implemented at intersections.

40. §6109(e) of Title 75 of the Pennsylvania Vehicle Code, requires that the decision to install multi-way stop control signs must be based on engineering and traffic studies that evaluate vehicle volume counts, intersection corner sight, distance measurements, crash data analysis, vehicle delay estimates, intersection geometry, adjacent roadway vehicles, and vehicle speeds through an area.

41. A PennDOT traffic study form, TE-102 Multi-Way Stop Controlled Intersections, is used to document traffic studies.

42. §212.106(c) of Title VII, contains Pennsylvania-specific criteria for the installation of uniform traffic control studies.

43. Section 2B.07 of the 'Manual on Uniform Traffic Control Devices (MUTCD) contains warrants for multi-way stop control applications that are supplemented by additional Pennsylvania-specific criteria in Section 212.106(c) of Title 67.

44. In approximately October/November 2022[1], Varughese's Director, Shahada, advised Varughese that multiple multi-way stop controls must be installed at the following intersections: 24th and West Union Street, 18th Street and Highland Street, North Sherman Street

---

[1] Varughese is not able to recall the exact dates which are contained in Allentown records, to which he does not presently have access.

6

and East Cedar Street (hereinafter collectively, "the Intersections"), where at the time two stop signs were installed on only one street of the Intersections.

45. Director Shahada advised Varughese that Mayor Tuerk was insisting that multi-way stop controls be placed at those intersections.

46. Varughese reiterated to Director Shahada that prior to installing any multi-way stop control, a multi-way stop control study must be performed.

47. In approximately November 2022, Varughese assigned Suzanne Dobbel, a Technician, to perform the multi-way stop control studies for the Intersections.

48. The studies completed by Technician Dobbel, concluded that multi-way stop control studies could not be installed at any of the Intersections.

49. Varughese advised Shada that the vehicle code criteria would not allow multi-way stop controls to be placed at any of the Intersections and he could not permit installation as it would violate applicable law and regulations.

50. Thereafter, at a meeting in approximately late December 2022 / January 2023 with PennDOT Representatives, Michael Rebert, P.E. District Executive at District -5, and two other PennDOT representatives to discuss many issues; at that time there was a discussion about the 24th Street and West Union Street intersection, and the PennDOT Representatives confirmed that the multi-way stop controls could not be installed on that intersection, which was a State Highway.

51. After receiving the information that the multi-stop controls could not be placed at the Intersections, Director Shahada told Varughese to do it anyway, and insisted that, "this is what the Mayor wanted, and it should be done"; Varughese reiterated that he could not do so.

52. Mayor Tuerk and Director Shada directed Varughese to violate applicable law and regulations and install the multi-way stop signs at the Intersections anyway.

53. Allentown's actions towards Varughese were willful and outrageous in that its motives and conduct as set forth above was malicious, wanton, reckless and oppressive.

54. Allentown's actions have caused Varughese considerable financial loss, emotional/mental distress, embarrassment, humiliation, and loss of self-esteem.

## COUNT I

## VIOLATION OF AGE DISCRIMINATION IN EMPLOYMENT ACT

## 29 U. S. C. § 621, et. seq.

55. Paragraphs 1 to 54 are incorporated herein by reference, as if set forth in full.

56. In terminating Varughese's employment and employing a less qualified substantially younger individual to perform the same duties as Varughese, Allentown has discriminated against Varughese based upon his age in violation of the ADEA.

57. Allentown's decision to terminate Varughese's employment was arbitrary and capricious, and based on a discriminatory animus towards older employees in the workplace.

58. Allentown's conduct is per se unlawful and constitutes unlawful age discrimination in violation of the ADEA.

WHEREFORE, Plaintiff Nelson Varughese requests that this Court enter judgment in his favor and against Defendant City of Allentown, and that this Court enter a declaratory judgment that Defendant's actions complained of herein violate the enactments of the federal legislature; and award Plaintiff damages exceeding $150,000.00, in the form of all compensation and monetary losses, which he has been denied, including back pay, front pay, pre-judgment interest; liquidated damages reasonable attorneys' fees, expert witness fees, costs, and all other relief

permitted by the Age Discrimination in Employment Act, and any other relief, which the Court deems appropriate.

## COUNT II

### VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964

### 42 U.S.C. §2000(e), et seq.

### DISCRIMINATION BASED UPON RACE/COLOR/NATIONAL ORIGIN

59. Paragraphs 1 to 58 are incorporated herein as if set forth in full.

60. Varughese is a member of protected classes based upon his race/color/national origin.

61. Allentown has engaged in unlawful employment practices by terminating Varughese's employment due to the fact that he is a native of India and is of Indian descent.

62. Allentown's decision to terminate Varughese's employment was arbitrary and capricious, and based upon a discriminatory animus towards non-Latinos, who are natives of India and of Indian descent in the workplace.

63. Allentown's conduct is per se unlawful and constitutes unlawful discrimination in violation of Title VII, which forbids race, national origin and color discrimination.

WHEREFORE, Plaintiff Nelson Varughese requests that this Court enter judgment in his favor, and against Defendant the City of Allentown and that this Court enter a declaratory judgment that Defendant's actions complained of herein, violate the enactments of the federal legislature; award Plaintiff damages exceeding $150,000.00, in the form of all compensation and monetary losses which he has been denied including back pay, compensatory damages, attorneys fees', expert witness fees, costs, and all other relief permitted under applicable law.

## COUNT III

## VIOLATION OF PENNSYLVANIA WHISTLEBLOWER LAW

## 43 P.S. §1421, et seq.

64. Paragraphs 1 to 63 are incorporated herein as if set forth in full.

65. The PWL provides, "No employer may discharge, threaten or otherwise discriminate or retaliate against an employee regarding the employee's compensation, terms, conditions, location or privileges of employment because the employee or a person acting on behalf of the employee makes a good faith report or is about to report, verbally or in writing, to the employer or appropriate authority an instance of wrongdoing or waste." 43 P.S. §1423(a).

66. The Pennsylvania Department of Transportation is an Appropriate Authority as defined by the PWL.

67. Allentown is an Employer as defined by the PWL.

68. Allentown is a Public Body as defined by the PWL as it is a City in the Commonwealth of Pennsylvania.

69. While employed at Allentown, Varughese was an Employee as defined by the PWL as he was a person who performs a service for wages or other remuneration under a contract of hire, written or oral, express or implied, for a public body.

70. Prior to the termination of his employment Varughese made a Good Faith Report as defined by the PWL.

71. Varughese was a Whistleblower as defined by the PWL as he was a witness or had evidence of alleged wrongdoing while employed by Allentown, who made a Good Faith Report of the Wrongdoing.

72. Allentown retaliated against Plaintiff by discharging him because he advised

Allentown that he would not violate the Multi-way stop control signs rules and regulations which would not permit Multi-way stop control signs to be placed at the Intersections.

73. Allentown's proffered reason for terminating Varughese's employment was pretextual as it did not have separate and legitimate reasons for terminating Varughese's employment.

WHEREFORE, Nelson Varughese requests that this Court enter judgment in his favor, and against Defendant the City of Allentown in an amount exceeding $150,000.00, in the form of all compensation and monetary losses sustained including payment of back wages and benefits from the date of discharge, compensatory damages in an amount to be proven at trial, actual damages incurred, costs of litigation, reasonable attorney and fees; and any other remedy the Court finds to be just.

/S/ Andrew S. Abramson, Esq.
_____
Andrew S. Abramson, Esq.
Abramson Employment Law, LLC
790 Penllyn Blue Bell Pike
Suite 205
Blue Bell, PA 19422
telephone: 267-470-4742
email: asa@aemploylaw.com

Dated: September 29, 2023					Attorney for Plaintiff Nelson Varughese