IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **NELSON VARUGHESE,** | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civil No. 5:23-cv-03805-JMG |
| | : | |
| **CITY OF ALLENTOWN** | : | |
| Defendants. | : | |

**MEMORANDUM OPINION**

**GALLAGHER, J.**                                                    **November 1, 2024**

## I.  OVERVIEW

Plaintiff Nelson Varughese was employed as Traffic Control Superintendent for the City of
Allentown ("Defendant") from 2013 to 2023. He now brings discrimination claims against his
former employer alleging (1) age discrimination in violation of the Age Discrimination in
Employment Act ("ADEA) and (2) race, color, and national origin discrimination in violation of
Title VII of the Civil Rights Act. Defendant, instead, claims his employment was terminated for
performance-related issues. Because Plaintiff is unable to sufficiently establish that Defendant's
legitimate, non-discriminatory reason for his termination is merely pretextual, the Court grants
Defendant's Motion for Summary Judgment.

## II.  FACTUAL BACKGROUND

Plaintiff Nelson Varughese began his tenure with Defendant City of Allentown on June 3,
2013, as a Traffic Control Superintendent. Pl.'s Resp. to Def.'s Statement of Undisp. Facts
(hereinafter "ECF No. 22-2") at ¶ 1. Plaintiff holds Level I and Level II certifications in Traffic
Control Management and Traffic Signal Controller Information and Inspections from the

1

International Municipal Signal Association. *See* Pl.'s Statement of Additional Facts (hereinafter "ECF No. 22-3") at ¶ 1. Moreover, he had previous experience in Traffic Control in both the public and private sectors. *See id.* at ¶ 2. Plaintiff's employment ended on May 9, 2023. ECF No. 22-2. at ¶ 40. In his role, he was supervised by Mark Shahda, the Defendant City's Director of Public Works. *Id.* at ¶ 6. At the time of Plaintiff's separation of employment, he was 62 years old. *Id.* at ¶ 3. He is of Indian national origin/race. *Id.* at ¶ 2.

Defendant has a Personnel Policy Manual which contains a section regarding "Discharge, Discipline, and Work Rules." *Id.* at ¶ 9. Generally, Defendant's disciplinary policy is progressive, however the policy also gives Defendant the ability to "'skip' less severe disciplinary action if the violation warrants, even if there have been no previous disciplinary action taken against the employee." *Id.* During the course of Plaintiff's tenure with Defendant, he received one written disciplinary notice six years prior to the termination of his employment. *Id.* at ¶ 10.

On May 9, 2023, the Director of Public Works requested that Plaintiff meet with him towards the end of the workday. *See id.* at ¶ 39. During this meeting, Plaintiff was informed by the Director that it would be his final day of employment with Defendant. *Id.* at ¶ 40. Plaintiff was presented with a termination letter and a resignation letter, and ultimately Plaintiff signed the resignation letter. *Id.* at ¶¶ 42-43. Plaintiff's position was later filled by a 27-year-old employee of Hispanic national origin/race. *Id.* at ¶ 70.

Defendant maintains that Plaintiff's employment was terminated due to workplace performance issues. Prior to the Director of Public Work's meeting with Plaintiff, he testified that he consulted with the Defendant's Legal Department. *Id.* at ¶ 35. Defendant cites several performance-related issues that led to the termination of his employment: "not following proper purchasing procurement, legal issues with signing contracts, lack of responsiveness to City's

Solicitor and City's Outside Counsel requests, not being prepared for lawsuits and providing false information under oath, having a significant amount of sick occasions, responses to City residents and City employees being delayed and not explaining things clearly, failure to meet deadlines and provide accurate information, not handling personnel issues within the Traffic Bureau and getting into a verbal altercation with City employees in April of 2023." *Id.* at ¶ 37. Plaintiff denies that any legitimate performance issues exist. *Id.* The performance issues were listed in a document prepared by the Public Works Administrative Manager at the direction of the Director of Public Works. *Id.* at ¶ 36. It is disputed whether and the extent to which Plaintiff was informed of this reasoning. *See id.* at ¶ 41.

### III.    STANDARD OF REVIEW

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is "genuine" when the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Physicians Healthsource, Inc. v. Cephalon, Inc.*, 954 F.3d 615, 618 (3d Cir. 2020). A fact is material if "it might affect the outcome of the suit under governing law." *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

The party moving for summary judgement must "identify[ ] those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrates the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted). In response, the nonmoving party must then "designate specific facts showing that there is a genuine issue for trial." *Id.* at 324 (internal quotation marks omitted). "The mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient; there must be evidence on which the jury could

reasonably find for the [nonmovant]." *Daniels v. Sch. Dist. of Phila.*, 776 F.3d 181, 192 (3d Cir. 2015) (quoting *Anderson*, 477 U.S. at 252).

In applying this standard, the court must "construe the evidence in the light most favorable to the non-moving party." *Anderson*, 477 U.S. at 255. At the summary judgment stage, the court's role is not to weigh the evidence and determine the ultimate truth of the allegations. *Baloga v. Pittston Area Sch. Dist.*, 927 F.3d 742, 752 (3d Cir. 2019); *see also InterVest, Inc. v. Bloomberg, L.P.*, 340 F.3d 144, 160 (3d Cir. 2003) ("When analyzing the evidence under this summary judgment standard, a court is not to weigh the evidence or make credibility determinations; these are tasks left for the fact-finder." (internal quotation marks omitted)). Instead, the court's task is to determine whether there remains a genuine issue of fact for trial. *Id.*

## IV.   ANALYSIS

### a.   Count I: Age Discrimination– 29 U.S.C. § 623(a)(1)

In Count I of his Amended Complaint, Plaintiff brings a claim alleging a violation of the Age Discrimination in Employment Act. The law makes it illegal for an employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1).

Age discrimination claims are analyzed under the burden-shifting framework from *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 793 (1973). *See Smith v. City of Allentown*, 589 F.3d 684, 689 (3d Cir. 2009) (recognizing that the Third Circuit has applied the burden-shifting framework to ADEA claims). Pursuant to this framework, Plaintiff "bears the burden of proof and the initial burden of production" of establishing the elements of a prima facie case of discrimination. *Id.* The elements are: (1) plaintiff is forty years old or older; (2) the defendant took

an adverse employment action against the plaintiff; (3) the plaintiff was qualified for the position in question; and (4) the plaintiff was ultimately replaced by another employee who was sufficiently younger to support an inference of discriminatory animus. *Id.* at 689-90 (citing *Potence v. Hazleton Area Sch. Dist.*, 357 F.3d 366, 370 (3d Cir. 2004)). If a plaintiff can make out a prima facie case of discrimination, the burden shifts to the defendant employer "to identify a legitimate non-discriminatory reason for the adverse employment action." *Id.* at 690. If a defendant can identify such a reason, the burden will once again shift to the plaintiff "to demonstrate that the employer's proffered rationale was a pretext for age discrimination." *Id.*

### i.   Plaintiff Has Established a Prima Facie Case of Discrimination

First, it is unclear as to whether Defendant contests whether Plaintiff can establish a prima facie case of discrimination. Defendant first argues that "Mr. Varughese cannot establish a *prima facie* case for age discrimination against the City." *See* Def.'s MSJ (hereinafter "ECF No. 21-1") at 5. But it then later appears to concede this point: "Solely for the purposes of this Motion, the City does not contest that Mr. Varughese can establish a *prima facie* case of age discrimination." *Id.* at 6. Given the uncertainty of Defendant's stated position, the Court will proceed with an analysis. Plaintiff has established the four elements of a prima facie case. First, it is undisputed that Plaintiff, at the time of the discharge, was 62 years old. *See* ECF No. 22-2 at ¶ 3. He was over forty, and thus covered by the ADEA.  *See* 29 U.S.C. § 631(a).

Second, Plaintiff has put forth sufficient facts to show that he was discharged from his employment with Defendant. He was informed on May 9, 2023, that it would be his final day of employment, and that he could choose to sign either a termination letter or a resignation letter. *See id.* at ¶¶ 40, 42. Viewing the record in the light most favorable to Plaintiff, a reasonable jury could find that such a forced resignation qualifies as an adverse employment action. *See Briggs v. Temple*

*Univ.*, 339 F. Supp. 3d 466, 489-90 (E.D. Pa. 2018) (rejecting argument in ADEA claim that plaintiff did not suffer an "adverse employment action because she resigned in lieu of termination").

Third, Plaintiff has also put forth sufficient facts to demonstrate that he was qualified for his position. Plaintiff was hired by Defendant as a Traffic Control Superintendent, and this was a position he had held for nearly ten years. *See* ECF No. 22-2 at ¶ 1. Additionally, Plaintiff possesses Level I and II certifications in Traffic Control Management and Traffic Signal Controller Information and Inspections from the International Municipal Signal Association. *See* ECF No. 22-3 at ¶ 1. Prior to Plaintiff's employment with Defendant, Plaintiff was employed by the Pennsylvania Department of Transportation as a Traffic Signal Specialist. *Id.* at ¶ 2. He also held the position of Senior Traffic Engineer at a private firm and operated his own traffic signal consulting business. *Id.* at ¶ 2. Given these facts, Plaintiff has adequately put forth facts to demonstrate he was qualified for his position.

Fourth, and finally, Plaintiff, was replaced by an individual who was significantly younger than him. Plaintiff's replacement was only 27 years old. *See* ECF No. 22-2 at ¶ 70. Such an age gap between Plaintiff and his replacement is sufficient to warrant in inference of discrimination. *See Showalter v. Univ. of Pittsburgh Med. Ctr.*, 190 F.3d 231, 236 (3d Cir. 1999) (discussing age difference sufficient to establish a prima facie case). Accordingly, Plaintiff has established a prima facie case of age discrimination.

### ii. Plaintiff Has Failed to Sufficiently Demonstrate that Defendant's Reason for Termination was Pretextual

The burden then shifts to Defendant to "identify a legitimate non-discriminatory reason for the adverse employment action." *Smith*, at 690. Here, Defendant alleges that performance issues were the reason behind Plaintiff's termination. *See* ECF No. 21-1 at 6 ("[T]he City separated

[Plaintiff's] employment based upon his poor work performance."). "To defeat summary judgment on an employment discrimination claim, a plaintiff must show a genuine issue of material fact as to whether 'the defendant's proffered reasons [for termination] were a pretext for discrimination.'" *Prigge v. Sears Holding Corp.*, 432 F. App'x. 170, 172 (3d Cir. 2011) (quoting *Ezold v. Wolf, Block, Schorr & Solis-Cohen*, 983 F.2d 509, 522 (3d Cir. 1992)). In other words, "a plaintiff must point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reason; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994).

As to the level of evidence needed to show pretext, "to avoid summary judgment the plaintiff's evidence rebutting the employer's proffered legitimate reasons must allow a factfinder reasonably to infer that *each* of the employer's proffered non-discriminatory reasons was either a *post hoc* fabrication or otherwise did not actually motivate the employment action (that is the proffered reason is a pretext)." *Id.* (internal citations omitted) (emphasis included). The plaintiff must show enough evidence so that a "reasonable factfinder *could* rationally find [the proffered reasons] unworthy of credence." *Id.* at 765; *see also Tomasso v. Boeing Co.*, 445 F.3d 702, 706 (3d Cir. 2006) ("[Plaintiff] must present evidence contradicting the *core facts* put forward by the employer as the legitimate reason for its decision." (emphasis included)).

Here, Plaintiff has not presented evidence from which a reasonable factfinder could determine that Defendant's purported reason for Plaintiff's termination—that is, poor performance—was merely pretext for discrimination. To start, workplace performance issues may constitute a legitimate, non-discriminatory reason for an employee to be subject to an adverse employment action. *See Ross v. Gilhuly*, 755 F.3d 185, 193 (3d Cir. 2014) (finding "demonstrably

7

poor job performance" constituted a "legitimate, non-discriminatory reason" for plaintiff's termination). Plaintiff fails to undermine Defendant's proffered reason for his termination.

Plaintiff argues that Defendant violated its own disciplinary policies in terminating him and that this is evidence of pretext. *See Mansfield v. Holder*, Civ. A. No. 09-cv-5718, 2012 WL 406432, at *23 (E.D. Pa. Feb. 9, 2012) (acknowledging that "an employer's failure to follow a disciplinary policy might demonstrate pretext" (citing *Craig v. Y & Y Snacks, Inc.*, 721 F.2d 77, 80 (3d Cir. 1983))). However, Defendant's own policy states that the disciplinary policy progressive nature may skip levels: "Disciplinary action will be progressive; verbal reprimand, time off without pay, discharge. . . . Progressive discipline may also 'skip' less severe disciplinary action if the violation warrants, even if there have been no previous disciplinary action taken against the employee." *See* ECF No. 22-5 at APP000457. The policy further requires that "[a]ny discipline other than a reprimand must be reviewed with the Human Resource Manager or designee." *Id.*

As Defendant notes in its briefing, the Third Circuit has determined on multiple occasions that failing to adhere to a non-mandatory employer disciplinary policy is not necessarily determinative as to whether Defendant's purported reason for terminating an employee was pretextual. *See Emmett v. Kwik Lok Corp.*, 528 F. App'x. 257, 262 (3d Cir. 2013) (rejecting argument that jury could infer pretext for failure to follow progressive discipline policy because plaintiff did not "produce[ ] evidence that this disciplinary policy was mandatory."); *Joyce v. Taylor Health & Rehab. Ctr. LLC*, 609 F. App'x. 104, 106 (3d Cir. 2015) (rejecting argument that "failure to apply [ ] progressive discipline policy" was evidence of pretext); *see also Hood v. Citizens Bank*

*of Pa.*, 694 F. App'x. 80, 83 (3d Cir. 2017) (same). The Policy here allowed supervisors to skip

levels of discipline depending on the level of violation.[1]

It is true that "evidence that [an] employer had not previously criticized the employee's

performance can contribute to an inference that those reasons were 'post hoc concoctions.'" *Moye*

*v. Verland Found.*, No. 22-2568, 2023 WL 5275010, at *4 (3d Cir. Aug. 16, 2023) (quoting *Jackson*

*v. Univ. of Pittsburgh*, 826 F.2d 230, 234 (3d Cir. 1987)). Here, the record indicates that Plaintiff

received a written disciplinary notice six years before the termination of his employment. See ECF

No. 22-2 at ¶ 10. But there are no other records of discipline until the events leading to Plaintiff's

termination. Nevertheless, Defendant prepared a document listing Plaintiff's performance issue in

anticipation of his termination. *See* ECF No. 22-11 at APP000484-86. Defendant lists six general

reasons for termination: (1) "Not following proper purchasing procurement"; (2) "Legal

concerns"; (3) "Sick occasions"; (4) "Responses to residents/city staff"; (5) "Meeting deadlines or

providing accurate information"; (6) "Personnel." *Id.* Under each of these reasons, the Defendant

provided detailed incidents from the years 2022 and 2023. *Id.* This document was prepared by the

Public Works Administrative Manager at the direction of the Director of Public Works. *See* ECF

No. 22-2 at ¶ 36. It is ultimately unclear when this document was prepared. *See* ECF No. 22-3 ¶

48. The Director of Public Works testified that he consulted with Defendant's Legal Department

---

[1] Plaintiff also alleges that Defendant violated its disciplinary policy by failing to involve anyone from the Human Resources Department in its decision to terminate Plaintiff. *See* ECF No. 22-2 at ¶ 35. The record indicates that the Director of Public Works testified that he did consult someone in Human Resources, though he could not remember who that person was. *Id.* However, the inclusion of a human resources employee was not included in Defendant's interrogatory response listing people the Director consulted prior to Plaintiff's termination. *Id.* This discrepancy could give rise to an issue of credibility—which is an issue for the factfinder and which the Court takes no position. But this controverted fact alone—whether Defendant failed to consult a Human Resources employee in violation of the policy—does not suffice to establish pretext that would foreclose summary judgment.

prior to Plaintiff's termination. *See* ECF No. 22-2 at ¶ 35. Defendant proffers that it is the culmination of these performance issues that led to Plaintiff's termination. *See id.* at ¶ 37.

Plaintiff, in his attempt to establish pretext, attempts to mitigate his alleged performance issues. *See* ECF No. 22-1 at 18 ¶¶ c, d. However, it is not the role of this Court to litigate the prudence of Defendant's legitimate, non-discriminatory reasoning, nor to pass judgment on whether the alleged performance issues warranted Plaintiff's termination. *See Brewer v. Quaker State Oil Refining Corp.*, 72 F.3d 326, 331 (3d Cir. 1995) ("To discredit the employer's proffered reason, the plaintiff cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether a discriminatory animus motivated the employer, *not whether the employer is wise, shrewd, prudent, or competent*." (emphasis added)). The Court is not "a super-personnel department that reexamines an entity's business decisions . . . Rather our inquiry is limited to whether the employer gave an honest explanation of its behavior." *Id.* at 332 (quoting *McCoy v. WGN Cont'l Broad. Co.*, 957 F.2d 368, 373 (7th Cir. 1992)). The burden is on Plaintiff to demonstrate "weaknesses, implausibilities, inconsistencies, incoherences, or contradictions in the employer's proffered legitimate reason for its action that a reasonable factfinder could rationally find them unworthy of credence." *Id.* (citing *Fuentes*, 32 F.3d at 765). While Plaintiff argues the legitimacy of some of the proffered performance issues and whether they warranted his termination, he does not provide sufficient evidence of "inconsistencies or incoherences" from which a reasonable juror could find that discrimination was the basis of Defendant's decision.

Further, Plaintiff cannot establish an inference of discrimination through overt acts, nor from comparator evidence. Plaintiff admits that Defendant never made any comments to him regarding his age. *See* ECF No. 22-2 at ¶ 68. Moreover, Plaintiff admits that at least three

employees of Defendant, who were each over forty years old themselves, were replaced by employees who were older than their predecessors. *See id.* at ¶¶ 66-67.

The core of Plaintiff's claim of discrimination is his own speculative belief that he was fired for discriminatory reasons, *see* ECF No. 22-2 at ¶¶ 46, 65, but this does not suffice to establish that Defendant's stated, legitimate, non-discriminatory reason was pretextual. *See Sarullo v. United States Postal Serv.*, 352 F.3d 789 (3d Cir. 2003) (recognizing that a plaintiff's "personal view of his employer's explanation . . . falls short of establishing pretext."). Defendant's Motion for Summary Judgment is granted as to Count I of Plaintiff's Amended Complaint, for Plaintiff has not put forth sufficient evidence so that a reasonable juror could find that Defendant's proffered reason for his termination was pretextual.

### b.  Count II: Title VII Discrimination – 42 U.S.C. §2000e-2(a)(1)

In Count II of his Amended Complaint, Plaintiff alleges race, color, and national origin discrimination in violation of Title VII of the Civil Rights Act. It is unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). The framework for analyzing this claim is the same as for the age discrimination claim— the *McDonnell Douglas* burden shifting framework. *See McKinney v. Hackensack Meridian Health, Inc.*, 749 F. App'x. 139, 143 (3d Cir. 2018) ("The burden shifting framework established in *McDonnell Douglas Corp. v. Green* applies to [plaintiff's] claims of discrimination under both Title VII and the ADEA" (citation omitted)).

First, a plaintiff must establish a prima facie case of discrimination, showing the following elements: "(1) s/he is a member of a protected class; (2) s/he was qualified for the position s/he

sought to attain or retain; (3) s/he suffered an adverse employment action; and (4) the action occurred under circumstances that could give rise to an inference of intentional discrimination." *Makky v. Chertoff*, 541 F.3d 205, 214 (3d Cir. 2008). If the plaintiff can satisfy these elements, "then an inference of discriminatory motive arises and the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for the adverse employment action." *Id.* If the defendant then satisfies this burden, then again "the inference of discrimination drops and the burden shifts back to the plaintiff to show that the defendant's proffered reason is merely pretext for intentional discrimination." *Id.*

### i. Plaintiff Has Established a Prima Facie Case of Discrimination

Once again, Plaintiff has established a prima facie case of discrimination. Plaintiff is a member of a protected class—he is Indian. *See* ECF No. 22-2 at ¶ 2. Further, for the reasons discussed in the previous section of this opinion, Plaintiff has put forth sufficient evidence establishing that he was qualified for his position and that he suffered an adverse employment action. *See id.* at ¶¶ 1, 40; *see also* ECF No. 22-3 at ¶¶ 1-2.

Next, the Court will assume without deciding that Plaintiff has sufficiently provided enough information to establish the fourth element of his prima facie case because he has shown that he was replaced by someone outside of his protected class. *See Hanafy v. Hill Int'l, Inc.*, 669 F. Supp. 3d 419, 437 (E.D. Pa. 2023) ("Evidence that an employee was replaced by someone outside of their protected class can be used to establish an inference of discrimination." (citing *Johnson v. Keebler-Sunshine Biscuits, Inc.*, 214 F. App'x. 239, 242 (3d Cir. 2007))). Plaintiff was replaced by an individual of Hispanic race/national origin. *See* ECF No. 22-2 at ¶ 70. Accordingly, the Court will move on to the next step of the *McDonnell Douglas* analysis.

> ii. **As Previously Analyzed, Defendant Has Not Established a Sufficient Basis for Pretext**

To briefly reiterate, Defendant argues that Plaintiff's employment was terminated due to workplace performance issues. It is then on Plaintiff to present evidence that this reason is pretext for discrimination. As discussed previously, Plaintiff has not put forth sufficient evidence from which a reasonable juror could determine that the reason Defendant provided was pretextual. *See Fuentes*, 32 F.3d at 764.

There are additional facts specifically relating to his claim of racial/national origin discrimination that the Court will emphasize. Plaintiff admits that no agent of Defendant ever made racial comments to him over the course of his employment, nor does he know of anybody making racial comments about him. *See* ECF No. 22-2 at ¶ 62. Plaintiff knows of no employee of a different race who was treated more favorably than him. *Id.* at ¶ 63. Moreover, Plaintiff acknowledges that an individual of his same race/national origin was promoted to become Finance Director during the Administration of Mayor Tuerk. *Id.* at ¶ 55. Again, Plaintiff has not presented sufficient evidence of pretext to defeat Defendant's Motion for Summary Judgment, and Defendant's Motion is granted as to Count II of his Amended Complaint.

V.   **CONCLUSION**

For the foregoing reasons, Defendant's Motion for Summary Judgment is **GRANTED**. An appropriate order follows.

BY THE COURT:

*/s/ John M. Gallagher*
JOHN M. GALLAGHER
United States District Court Judge

13